IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LANNY BLACK,<br><br>        Plaintiff,<br><br><br>        vs.<br><br><br>DESERET MUTUAL BENEFIT ADMINISTRATORS,<br>        Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 2:15-CV-00695-TC<br><br><br>Judge Tena Campbell |

Unable to work and suffering from a variety of illnesses including a severe, systemic yeast infection (which the parties often refer to as systemic candidiasis or candida), Lanny Black applied for insurance benefits through his insurer's administrator, Deseret Mutual Benefit Administrators (DMBA).  DMBA determined that Mr. Black's disability qualified as chronic pain or a fatigue-related illness under the insurance plan, which limits coverage for such disabilities to twelve months.  Disagreeing with DMBA's interpretation of the insurance plan, Mr. Black brought this lawsuit, seeking an award of insurance

benefits under the Employment Retirement Income Security Act of 1974

(ERISA).  Mr. Black and DMBA filed cross motions for summary judgment on

Mr. Black's claim.  Because the court finds that DMBA's interpretation of the

insurance policy is arbitrary and capricious, the court GRANTS Mr. Black's

motion for summary judgment in part, DENIES it in part, and DENIES DMBA

motion for summary judgment.

## BACKGROUND

### I.  The Plan Limits Benefits for Chronic Pain and Fatigue-Related Illness.

The Corporation for the Church of Jesus Christ of Latter-Day Saints offers

eligible employees the Disability Income Plan (the Plan) provided by Deseret

Healthcare Employee Benefits Trust (the Trust), a self-funded voluntary

employees' benefits association.  The Trust pays disability benefits under the

Plan, whereas DMBA administers the Plan.  The Plan gives DMBA

"discretionary authority to . . . construe and interpret the Plan and to make final

binding decisions regarding Plan benefits."  (R. DMBA 8, ECF No. 16.)

Section VI of the Plan limits the benefits provided for chronic pain and

fatigue-related illness. It provides as follows:

> 6.01  **Duration of Benefit:** Disability benefits for a an [sic]
> Injury or Illness covered by this section shall be available

for an aggregate total of 12 months, for any single period of disability, except as provided in 7.01 hereafter.

6.02   **Criteria:**   If the Eligible Employee has chronic pain and fatigue-related illness, he may be eligible for Plan benefits as long as he is actively trying to find a diagnosis and his symptoms include all of the following criteria:
(a)   Symptoms are primarily pain and/or fatigue;
(b)   Symptoms significantly interfere with the ability to work based on reports of the Eligible Employee, Employer, Physician, family members, and others;
(c)   Symptoms have been medically documented; and
(d)   A correlating cause of the symptoms and treatment plan has not been identified.

6.03   **Chronic Fatigue Syndrome or Fibromyalgia:** An Eligible Employee diagnosed with either chronic fatigue syndrome or fibromyalgia is eligible for benefits for a maximum of 12 months, including any time the Eligible Employee received benefits prior to the diagnosis.

(Id. DMBA 21.)  The Plan does not define the term "chronic pain and fatigue related illness."  (Id.)

The summary plan description (SPD) published with the Plan explains that "if you have a disabling diagnosis in addition to chronic pain or a fatigue-related illness, you may be eligible for additional [Plan] benefits beyond the twelve-month limit."  (Id. at 3 (emphasis added).)  Significantly, the SPD specifies that if the chronic pain or chronic fatigue "is determined to be the result of another

3

medical diagnosis," then Section VI's twelve-month limitation does not apply.
(Id. at 4 (emphasis added).).

## II.  Mr. Black Applies for Plan Benefits and DMBA
## Limits Him to Twelve Months.

Mr. Black worked as a painter for the Corporation of the Church of Jesus
Christ of Latter Day Saints from 1985 until 2013, when he took a medical leave
of absence.  Mr. Black was covered by the Plan.

In early August 2013, Mr. Black applied for the Plan's long-term disability
benefits, noting that he suffered from a variety of illnesses including
"fibromyalgia, chronic fatigue and candida, depression, anxiety, brain fog,
intestinal cramping, migraines, insomnia, [and] nausea."  (R. DMBA 234, ECF
No. 16.)  Mr. Black also wrote that he had received a CT scan, an endoscopy, and
a colonoscopy in an effort to understand and treat his intestinal cramping, and that
his doctor had prescribed medications to "kill the candida."  (Id. at 235.)

Mr. Black's physician, Dr. Stan Gardner, also submitted information to
DMBA.  Dr. Gardner diagnosed Mr. Black as having three separate disabling
diagnosis: "Chronic Fatigue Syndrome, Fibromyalgia, [and] Systemic
Candidiasis."  (Id. at 243.)  Dr. Gardner reported that Mr. Black had tested
"strongly positive" for a systemic yeast infection and that Mr. Black's esophagus

had been removed in treatment.  (Id.)  Dr. Gardner wrote that he was treating Mr.
Black with aggressive anti-yeast-infection medication.

In September of 2013, DMBA reviewed Mr. Black's application and
granted him benefits for a twelve-month period only, citing the fibromyalgia
diagnosis. DMBA noted that Mr. Black's "medical condition(s) can entitle [him]
to a maximum benefit period of 12 months" under Section VI of the Plan.  (Id. at
41.)

In February 2014, Dr. Gardner clarified that Mr. Black was unable to
perform sedentary work on a full-time basis.  Dr. Gardner reiterated that "Severe
Systemic Yeast, Fibromyalgia/Chronic Fatigue" were Mr. Black's primary
limiting diagnosis.  (Id. at 155.)

In April 2014, DMBA wrote to Mr. Black and, citing Section VI of the
Plan, restated its conclusion that the Plan entitled him to no more than twelve
months of coverage.  But DMBA also informed Mr. Black that if he has a
"disabling diagnosis in addition to chronic pain or a fatigue-related illness," he
may be "eligible for additional [Plan] benefits beyond the twelve-month limits."
(Id. at 104.)

In July 2014, Mr. Black appealed DMBA's determination to DMBA's appeal division.  Mr. Black again argued that his systemic yeast infection qualified as a separate disabling diagnosis so Section VI's twelve-month limitation did not apply.  In his appeal, Mr. Black described in thorough detail his previous bouts with systemic yeast infection, including the removal of his esophagus.  Mr. Black noted that although he had been diagnosed with fibromyalgia, yeast infection was the "underlying problem" causing his fatigue. (Id. at 71.)

In August 2014, DMBA rejected Mr. Black's appeal.  In its rejection letter, DMBA determined that because Mr. Black's medical condition precluding work "relates directly to fatigue," it falls within Section VI whether the medical condition is "Severe Yeast Infection, Systemic Yeast Infection, or Systemic Candidiasis."  (Id. at 32.)

Mr. Black submitted a final appeal to DMBA in September 2014.  Mr. Black contended that he should be eligible for benefits beyond the twelve-month limitation because his systemic yeast infection qualifies as a separate, disabling diagnosis.  Mr. Black also argued that systemic yeast infection is no more a

fatigue-related illness than cancer.  He emphasized that both diseases caused symptoms of fatigue and pain.

DMBA again denied Mr. Black's appeal.  In an email to Mr. Black explaining its decision, DMBA stated that although "Systemic Yeast Infection is an established diagnosis for you, the physician states that the disabling symptoms that prevent you from working are fatigue and chronic pain which is administered under [Section VI] of the [Plan.]"  (Id.)

Having exhausted the appeals process with DMBA, Mr. Black sued in this court.

## DISCUSSION

### I.  The Court Reviews DMBA's Interpretation Under the Arbitrary-and-Capricious Standard.

In an ERISA case, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."  LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 796 (10th Cir. 2010) (citation and internal quotation marks omitted).

The court generally reviews an administrator's decision to grant or deny benefits under a de novo standard of review.  Id.  But when the plan gives the administrator discretionary authority "to determine eligibility for benefits or to construe the terms of the plan," the court will "employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." Id. (citation and internal quotation marks omitted).  Arbitrary-and-capricious review "is limited to determining whether [the] interpretation [of the plan] was reasonable."  Hickman v. GEM Ins. Co., 299 F.3d 1208, 1213 (10th Cir. 2002) (citation and internal quotation marks omitted).

Here, the Plan states that DMBA "has discretionary authority to . . . construe and interpret the Plan and to make final binding decisions regarding Plan benefits."  (R. DMBA 8, ECF No. 16.)  And Mr. Black agrees that the court should review DMBA's decision under the arbitrary-and-capricious standard.  As a result, the court reviews DMBA's denial under the arbitrary-and-capricious standard.

## II.  DMBA's Interpretation of Section VI Is Unreasonable.

Mr. Black contends that DMBA arbitrarily and capriciously interpreted Section VI when it determined that because Mr. Black's primary symptoms were

8

pain and fatigue, the Plan limited his benefits to twelve months regardless of any separate, disabling diagnosis or cause.  According to Mr. Black, his systemic yeast infection qualifies as a disabling diagnosis in addition to his fibromyalgia and chronic fatigue, entitling him to benefits beyond Section VI's twelve-month limitation.

DMBA disagrees, arguing that as long as the primary symptoms of an illness are pain and fatigue, the illness falls within Section VI's twelve-month limitation.  DMBA maintains that even if "the yeast infection is causing some or all of the reported chronic fatigue and pain, it does not change the fact that the disabling pathology is chronic fatigue and pain."  (Def.'s Mot. for Summ. J. 7, ECF No. 17.)  "[A]s long as the primary symptoms are pain and fatigue, you've got one year [of benefits] no matter what the cause."  (Hr'g on Mot. for S.J., T.R. 15:11–14, ECF No. 31.)  This is consistent with DMBA's denial letter in which it explained that it limited his coverage to twelve months because "the symptoms [he was] experiencing from [his] medical condition are fatigue-related" regardless of whether DMBA "refers  to [the medical condition] as Severe Yeast Infection, Systemic Yeast Infection, or Systemic Candidiasis."  (R. DMBA 47, ECF No. 16.)

Under the arbitrary-and-capricious standard, a court asks only whether the plan administrator's interpretation of a plan's language is reasonable. Geddes v. United Staffing All. Employee Med. Plan, 469 F.3d 919, 929 (10th Cir. 2006). Yet even under this restrictive standard, an administrator may not ignore plan language or employ interpretations contrary to plan language. See Pratt v. Petroleum Prod. Mgmt. Inc. Emp. Sav. Plan & Trust, 920 F.2d 651, 662 (10th Cir. 1990); William S. v. NASDAQ OMX Flexible Benefits Program, No. 2:13-CV-00125 DN, 2014 WL 5819561, at *5 (D. Utah Nov. 10, 2014).

Here, DMBA unreasonably interprets the Plan. Though Section VI limits benefits for employees with chronic pain or a fatigue-related illness, it says nothing about Plan benefits for beneficiaries whose fatigue-related illness or chronic pain results from another disabling diagnosis. But the SPD does.[1] The SPD reads that "if you receive benefit payments for chronic fatigue and several months later the chronic fatigue is determined to be the result of another medical

---

[1] Neither party has asserted that the SPD "conflicts with the Plan[], contains terms unsupported by the Plan[], or contains provisions not authorized by or made part of the plan[]." Fulghum v. Embarq Corp., 785 F.3d 395, 403 n.4 (10th Cir. 2015). In fact, both parties cite to the SPD in support of their position. Accordingly, like the Tenth Circuit faced with a similar situation, the court assumes that "the SPD is part of the Plan." Id. (citation and internal quotation marks omitted).

diagnosis" then Section VI's twelve-month limitation does not limit the

claimant's benefits.  (R. DMBA 4, ECF No. 16.)  DMBA's interpretation of the

Plan, and its treatment of Mr. Black, contradicts this language.  Under DMBA's

interpretation, if your chronic fatigue or chronic pain results from another illness,

the Plan still limits you to twelve months of coverage.  Because DMBA's

interpretation contradicts the plain language of the Plan, it is unreasonable.

Section VI itself supports this conclusion.  Subsection 6.02 allows eligible

employees Plan benefits beyond twelve months:

> 6.02   **Criteria:**  If the Eligible Employee has chronic pain and
> fatigue-related illness, he may be eligible for Plan benefits
> as long as he is actively trying to find a diagnosis and his
> symptoms include all of the following criteria:
>
> (a)   Symptoms are primarily pain and/or fatigue;
> (b)   Symptoms significantly interfere with the ability to
> work based on reports of the Eligible Employee, Employer,
> Physician, family members, and others;
> (c)   Symptoms have been medically documented; and
> (d)   A correlating cause of the symptoms and treatment
> plan has not been identified.

(Id. at 21.).  Based on its plain language, this provision allows for extended

benefits in the event the employee has not found a diagnosis for his pain or

fatigue-related symptoms.

11

DMBA's interpretation of the Plan would render this provision meaningless. Under DMBA's interpretation, an employee diagnosed with any condition—including cancer—who primarily suffers from pain will be cut off from Plan benefits at twelve months. It does not make sense for the Plan to allow an employee coverage beyond twelve months while he seeks diagnosis for his symptoms if the Plan would then cut him of once he finds it, regardless of the diagnosis. Rather, this provision makes sense under the court's interpretation of the Plan: it allows employees Plan benefits while they seek a diagnosis for their pain or fatigue in the event the employee's pain or fatigue is caused by a condition not limited to twelve months of coverage.

DMBA resists this conclusion. In addition to arguing that its interpretation of the Plan is reasonable, DMBA contends that Mr. Black's benefits should be limited because he fails to "provide any specific medical opinion in support" of his assertion that his systemic yeast infection caused his disability. (D's Mot. for Summ. J. 7, ECF No. 17.) But the record illustrates the opposite. For example, when asked by DMBA to "clarify [Mr. Black's] primary limiting diagnosis," Dr. Gardner writes that his primary limiting diagnosis is "Severe Systemic Yeast" in addition to "Fibromyalgia/Chronic Fatigue." (R. DMBA 155, ECF No. 16.)

12

Further, on another occasion Dr. Gardner informed DMBA that "Systemic

Candidiasis" qualified as one of Mr. Black's "[d]isability diagnosis."  (<u>Id.</u> at 243.)

Finally, the record indicates that DMBA accepted that Dr. Gardner had provided

a medical opinion that the systemic yeast infection caused Mr. Black's disability.

For example, DMBA wrote to Mr. Black that his benefits were limited to twelve

months even though Dr. Gardner advised "that the medical condition precluding

work (<u>regardless of whether we refer to it as Severe Yeast Infection, Systemic</u>

<u>Yeast Infection, or Systematic Candidiasis</u>) relates directly to fatigue."  (<u>Id.</u> at 32

(emphasis added.))  Consequently, DMBA's argument that Mr. Black failed to

provide a medical opinion in support of his assertion fails.

### III.  The Court Denies Mr. Black's Request for Attorney Fees

Mr. Black directs the court to 29 U.S.C. § 1132(g)(1) and requests that

DMBA pay his "attorney's fees, pre- and post-judgment interest and any

reasonable court costs."  (Pl.'s Mot. for Decision on the R. 15, ECF No. 15.)

DMBA argues that no evidence suggests it acted in bad faith and, as a result, Mr.

Black does not merit an award of attorney fees or court costs.

29 U.S.C. § 1132(g)(1) states that the court "in its discretion may allow a

reasonable attorney's fee and costs of action to either party."  In determining

13

whether to award attorney's fees under this section, a court should look to the

following factors to guide its analysis:

> (1) the degree of the opposing parties' culpability or bad faith; (2)
> the ability of the opposing parties to personally satisfy an award of
> attorney's fees; (3) whether an award of attorney's fees against the
> opposing parties would deter others from acting under similar
> circumstances; (4) whether the parties requesting fees sought to
> benefit all participants and beneficiaries of an ERISA plan or to
> resolve a significant legal question regarding ERISA; and (5) the
> relative merits of the parties' positions.

Gordon v. U.S. Steel Corp., 724 F.2d 106, 109 (10th Cir. 1983).

Here, these factors cut both ways, but weigh in favor of not awarding fees

and costs.  First, though DMBA's interpretation of the Plan is unreasonable, it

remains unclear whether DMBA acted entirely in bad faith.  Second, a review of

the administrative record does not reveal DMBA's financial situation and,

consequently, whether DMBA could satisfy an award of attorney's fees.  Third,

an award of attorney's fees could induce others to more thoroughly review their

plans before denying a claimant benefits.  Fourth, Mr. Black brought this suit to

recover benefits owed to him, not to anybody else.  Nor did Mr. Black seek to

resolve any significant legal questions regarding ERISA.  And fifth, DMBA's

interpretation was unreasonable, so the merits of Mr. Black's position greatly

14

outweighed the merits of DMBA's. Considering all of these factors, the court

decides not to awarding attorney fees or costs.[2]

## ORDER

For these reasons, the court ORDERS as follows:

1.       The court GRANTS Mr. Black's Motion for Summary Judgment in

part and DENIES it in part (ECF No. 15):

(a)      DMBA must pay Mr. Black under the Plan, without regard to

Section VI's twelve-month limitation.

(b)      The court DENIES Mr. Black's request for attorney's fees and

costs.

_____

[2] In its motion, DMBA attached a declaration from a DMBA employee.  This
declaration cannot be found in the administrative record.  Further, DMBA
discussed Mr. Black's history with the Social Security Administration.  This
history also cannot be found in the administrative record.  In response, Mr. Black
filed a Motion to Strike the declaration (ECF No. 19) and a request for Extension
of Time (ECF No. 21) so that he could provide the court with information from
the Social Security Administration.  Summary judgment in an ERISA case "is
decided solely on the administrative record."  LaAsmar v. Phelps Dodge Corp.
Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d
789, 796 (10th Cir. 2010) (citation and internal quotation marks omitted).
Because the court will not rely on any evidence not in the administrative record,
the court will not rely on any evidence regarding the declaration or Mr. Black's
history with the Social Security Administration.  Accordingly, Mr. Black's
motions are moot.

2.      The court DENIES DMBA's Motion for Summary Judgment (ECF No. 17).

3.      The court DENIES as moot Mr. Black's Motion to Strike (ECF No. 19) and Motion for Extension of Time (ECF No. 21).

DATED this 21th day of September, 2016.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge

16